**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DEALER SPECIALITIES INTERNATIONAL, INC.,**

**Plaintiff,**

**v.** **Case No: 6:18-mc-58-Orl-41LRH**

**CAR DATA 24/7, INC. et al.,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S *UNOPPOSED* MOTION REQUESTING THAT COURT DIRECT CLERK TO DESIGNATE CASE MANAGEMENT TRACK AND DIRECT PARTIES TO CONFER AND SUBMIT A CASE MANAGEMENT REPORT (Doc. No. 40)** |
| **FILED:** | **March 17, 2020** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

| | |
|---|---|
| **MOTION:** | **IMPLEADER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SUPPLEMENTAL COMPLAINT (DOC. 28) WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 38)** |
| **FILED:** | **October 15, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part.**

## I. BACKGROUND.

On September 20, 2016, Plaintiff Dealer Specialities International, Inc. registered a foreign judgment from the United States District Court for the Southern District of Ohio in the Tampa division of the Court. Doc. No. 1. The case was subsequently transferred to this Court on September 28, 2018. Doc. No. 3. The foreign judgment awarded $1,358,889.24 in favor of Plaintiff and against Defendant Car Data 24/7, Inc. and Gary Lindsey, jointly and severally, plus interest. Doc. No. 1, at 2. On July 12, 2017, a Judgment Lien Certificate was issued by the Florida Department of State. Doc. No. 11-1. On March 14, 2019, Plaintiff obtained a writ of execution against Defendant Car Data 24/7, Inc. Doc. No. 10.

Plaintiff thereafter sought to commence proceedings supplementary in aid of execution of the foreign judgment. Doc. No. 11. Plaintiff also sought to implead third parties CarData, Inc., John Finucane, Jaylee's Auto Sales, Inc., and Dealer360, Inc. pursuant to Fla. Stat. § 56.29. *Id.* Upon review, the undersigned found that because Plaintiff had submitted evidence that final judgment was entered in its favor, the judgment remained unsatisfied, and the Clerk issued a writ of execution, Plaintiff was entitled to institute proceedings supplementary. Doc. No. 14, at 5. As to Plaintiff's request to implead third parties, Plaintiff was arguing that Defendant had fraudulently transferred certain property to such third parties within the year preceding service of process on Defendant in the original proceedings against it. Doc. No. 11. Because Plaintiff had alleged that Defendant had transferred property "to delay, hinder, or defraud creditors," the undersigned found that impleader of the third parties was also proper. Doc. No. 14, at 7.[1] Therefore, the undersigned

[1] *See, e.g.*, *Forster v. Nations Funding Source, Inc.*, 648 F. App'x 850, 851 (11th Cir. 2016) (citations

directed Plaintiff to file Notices to Appear directed to the parties to be impleaded. *Id.* at 8; *see* Fla. Stat. § 56.29(2). The Notices to Appear thereafter issued. Doc. No. 19.

Each of the impleaded parties appeared through counsel. Doc. Nos. 20–21, 25. Each of the impleaded parties also filed affidavits in response to the Notices to Appear. Doc. Nos. 22–24, 26–27; *see* Fla. Stat. § 56.29(2).

On August 26, 2019, Plaintiff filed a Supplemental Complaint and Demand for Jury Trial, pursuant to Federal Rules of Civil Procedure 66 and 69(a) and Fla. Stat. § 56.29. Doc. No. 28. Plaintiff alleges that the Court has ancillary jurisdiction over Plaintiff's fraudulent transfer claims against the impleaded parties, and that the parties are completely diverse. *Id.* ¶¶ 5–9. Plaintiff alleges "Successor Liability as Alter Ego or Mere Continuation" against CarData, Inc. (Count I); "Fraudulent Transfer Under § 56.29(3)(a) & (b)" against each of the impleaded parties (Counts II through V); and "Fraudulent Transfer Under § 726.105" against each of the impleaded parties (Counts VI through IX). *Id.* at 10–19.

Dealer360, Inc. and Jaylee's Auto Sales, Inc. have filed an answer and affirmative defenses to the Supplemental Complaint. Doc. No. 34. CarData, Inc. and John Finucane have filed a motion to dismiss the Supplemental Complaint. Doc. No. 38. Plaintiff timely responded to the motion to dismiss, Doc. No. 39, and thereafter filed an Unopposed Motion Requesting that Court

---

omitted) ("[I]f the party satisfies the statutory requirements and alleges that the judgment debtor has transferred property to delay, hinder, or defraud creditors, no other showing is necessary in order to implead the third party."). The undersigned noted, however, that impleader of third parties was related to property fraudulently transferred to such third parties, and that Plaintiff would have to separately establish the Court's original jurisdiction over a claim that any of the third parties were actually alter egos of Defendant. Doc. No. 14, at 7 n.2; *see SMS Fin. J, LLC v. Cast-Crete Corp.*, No. 8:18-mc-00008-CEH-JSS, 2018 WL 1726434, at *2 (M.D. Fla. Apr. 10, 2018) (explaining difference between alter ego liability and disgorgement for fraudulent transfer for purposes of impleader); *see also* Fla. Stat. § 56.29(9) (requiring claimant to file a supplemental complaint against subsequent transferee's of judgment debtor's assets for claims under Chapter 726, Florida Statutes).

Direct Clerk to Designate Case Management Track and Direct Parties to Confer and Submit a Case Management Report. Doc. No. 40.

The motion to dismiss and the motion to designate a case track were referred to the undersigned, and the matters are ripe for review.

**II. MOTION TO DESIGNATE CASE TRACK (Doc. No. 40).**

As an initial matter, Plaintiff asks that the Court, pursuant to Local Rule 3.05(a), direct the Clerk of Court to designate this a Track Two Case and direct the parties to submit a Case Management Report. Doc. No. 40. None of the impleaded Defendants oppose the motion. *Id.* at 3. On review, Plaintiff's motion raises an issue as to whether this case should proceed as a "miscellaneous" case or whether it should be converted to a civil proceeding.

"Proceedings supplementary are not independent causes of action but are post-judgment proceedings that permit a judgment creditor to effectuate a judgment lien that already exists." *ABM Fin. Servs., Inc. v. Express Consolidation, Inc.*, No. 07-60294-CIV, 2011 WL 915669, at *1 (S.D. Fla. Mar. 16, 2011) (citations omitted). Pursuant to Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Because Rule 69(a) provides that proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located, Florida law applies when proceedings supplementary are instituted in this Court. *Wubben v. Kirkland*, No. 6:08-cv-1105-Orl-22DAB, 2012 WL 12951413, at *1 (M.D. Fla. Sept. 11, 2012).

"After a party initiates proceedings supplementary, a creditor may pursue assets held by the debtor, assets of the debtor held by another, or assets that have been fraudulently transferred to

another. But the rights of any third party interest-holders must be accounted for by impleading them into the proceeding and allowing them to defend their interests." *Kennedy v. RES- GA Lake Shadow, LLC*, 224 So. 3d 931, 933 (Fla. 1st Dist. Ct. App. 2017) (citations omitted). Impleading third parties into a proceeding supplementary does not imply liability on the part of the impleaded third parties; instead, it provides the impleaded parties an ability to raise defenses and protect their interests consistent with the requirements of due process. *See Mission Bay Campland, Inc. v. Sumner Fin. Corp*., 71 F.R.D. 432, 435 (M.D. Fla. 1976).

However, under Florida law, claims pursuant to Chapter 726, Florida Statutes, including claims for "a money judgment against any initial or subsequent transferee" must be initiated by filing a supplemental complaint. Fla. Stat. § 56.29(9). In Florida, the clerk of court "docket[s] a supplemental proceeding under the same case number assigned to . . . the case number assigned to a judgment domesticated pursuant to s. 55.01," and assigns the supplemental proceeding to the same judge overseeing the domesticated judgment. *Id.*

In addition, federal courts have jurisdiction to hold a third party directly liable for a foreign judgment if the plaintiff "separately establishes the Court's original jurisdiction over such a claim." *See, e.g.*, *SMS Fin. J, LLC*, 2018 WL 1726434 at *2.[2] Thus, although some supplementary proceedings are ancillary proceedings, that "does not mean that *all* supplementary proceedings are ancillary." *Jackson-Platts v. Gen. Elec. Capital Corp*., 727 F.3d 1127, 1139 n.7 (11th Cir. 2013). This is particularly true in cases such as that at bar, in which the judgment creditor seeks to hold

[2] *See also Peacock v. Thomas*, 516 U.S. 349 (1996); *Epperson v. Entm't Express, Inc*., 242 F.3d 100, 106 (2d Cir. 2001) ("Since *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability. Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party." (citations omitted)).

third parties liable for a fraudulent conveyance or to hold a third party directing liable on an underlying judgment.  *See id.* (noting that Florida court's treat supplementary proceedings under section 56.29(6) as a substantive, independent action); *see also Walton v. St. Paul Fire & Marine Ins. Co.*, No. 17-61391-CIV, 2018 WL 5098965, at *4 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted in part*, 2018 WL 5098833 (S.D. Fla. Sept. 4, 2018) ("[P]roceedings supplementary brought under the fraudulent transfers subsection of Fla. Stat. § 56.29 are deemed independent civil actions . . . .").  *Cf. Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 787 (11th Cir. 2015) (citation and quotation marks omitted) (concluding district court had ancillary jurisdiction over supplementary proceedings to disgorge judgment debtor's principal of fraudulently transferred assets, but noting that "ancillary jurisdiction does not extend to a new lawsuit to impose liability for a judgment on a third party").

Here, upon impleading third parties into this case, and seeking to impose liability on these third parties for fraudulent transfers, Plaintiff filed a Supplemental Complaint against the third parties as required under Florida law.  Doc. No. 28.  *See* Fla. Stat. § 56.29(9).  Plaintiff has separately established the Court's jurisdiction over the supplemental complaint by adequately alleging that the parties are completely diverse, and that the amount in controversy exceeds $75,000.00.  Doc. No. 28 ¶¶ 6–9; *see* 28 U.S.C. § 1332.  I recommend that because Plaintiff has filed a Supplemental Complaint, and because third parties have been impleaded in this case, that the matter be converted from a miscellaneous case to a civil action.  *See, e.g.*, *Reiseck v. Universal Commc'ns of Miami, Inc.*, 141 F. Supp. 3d 1295, 1308 (S.D. Fla. 2015) (commencing proceedings supplementary with impleaded third parties, directing the Clerk of Court to designate the case as "civil" rather than "miscellaneous," and ordering the plaintiff responsible for paying the Clerk any difference in the filing fee).  Further, upon converting this matter to a civil case, I recommend that

the Court direct the Clerk to designate this case as a Track Two case, as Plaintiff's motion requests. *See, e.g.*, *Home Assurance Co. v. Weaver Aggregate Transport*, *Inc*., 5:10-cv-329-Oc-TJC-PRL, Doc. No. 364 (M.D. Fla. May 2, 2017) (designating proceedings supplementary after final judgment as Track Two case within the meaning of Local Rule 3.05 and directing parties to meet and prepare Case Management Report).

Therefore, I recommend that Plaintiff's Unopposed Motion Requesting that the Court Direct Clerk to Designate Case Management Track and Direct Parties to Confer and Submit a Case Management Report (Doc. No. 40) be **GRANTED**. Specifically, I recommend that the Court (1) direct the Clerk of Court to convert this matter to a civil case; (2) order Plaintiff to pay the difference in the filing fees; (3) direct the Clerk of Court to designate this case as a Track Two case pursuant to Local Rule 3.05; and (4) order the parties to meet and prepare a Case Management Report, within a time established by the Court.

## III. MOTION TO DISMISS (Doc. No. 38).

### A. Standard of Review.

CarData, Inc. and John Finucane move to dismiss the Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 38. Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a court must accept as true well-pleaded

allegations, it is not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Moreover, the Court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *See Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Finally, a complaint is subject to dismissal when its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).

B. Allegations of the Supplemental Complaint.[3]

Plaintiff alleges that Defendant Car Data 24/7, Inc. ("Car Data 24/7") was a franchisee of Plaintiff involved in the photography, data collection, data distribution, and vehicle inventory merchandising for vehicles. Doc. No. 28 ¶ 13. As of 2011, Car Data 24/7 was solely owned by Ell Jay Lindsey ("Lindsey"). *Id.* ¶ 17. As of 2014, Car Data 24/7, through Lindsey and certain vendors, serviced approximately 80 car dealerships under Plaintiff's vehicle inventory platform. *Id.* ¶ 19. By his access to the franchised business, Lindsey learned confidential information about Plaintiff's trade secrets and business model, received training by attending Plaintiff's conferences, and gained considerable contact with Plaintiff's clients and opportunities to develop industry relationships. *Id.* ¶ 23. Impleaded Defendant John Finucane ("Finucane"), a high school friend of Lindsey, worked for Car Data 24/7 from 2005 through 2015 as an operations manager, primarily servicing car dealerships. *Id.* ¶ 21.[4] As a member of management, Finucane likewise learned

[3] At the motion to dismiss stage, courts must assume "that all the [factual] allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

[4] The Supplemental Complaint also alleges the involvement of a person named Raul Carabeo in working for Car Data 24/7 and in the operation of CarData. *E.g.*, Doc. No. 28 ¶¶ 20, 22, 52. Because Carabeo is not a party to these proceedings, his alleged involvement is not further discussed throughout this Report and Recommendation.

confidential information, attended training, and gained considerable contact with Plaintiff's clients and opportunities.  *Id.* ¶ 24.

In 2014, Lindsey formed Dealer360, Inc., which he solely owned.  *Id.* ¶ 25.  In August 2014, Lindsey began to transfer money from Car Data 24/7 to Dealer360, which Dealer360 used to develop a mobile application for the photography, data collection, data distribution, and vehicle inventory merchandising of vehicles.  *Id.* ¶¶ 25–26.  At around the same time, Lindsey also began transferring money from Car Data 24/7 to Jaylee's Auto Sales, an entity likewise solely owed by Lindsey.  *Id.* ¶ 27.  In the Fall of 2014, Car Data 24/7 started defaulting on its franchisee payment obligations to Plaintiff.  *Id.* ¶ 28.

In November 2014, Lindsey began communicating with a competitor of Plaintiff—HomeNet, Inc., and in December 2014, Lindsey finalized a Reseller Agreement with HomeNet.  *Id.* ¶¶ 29–32.  In the Reseller Agreement, Car Data 24/7 represented that "it is not a party to any agreement with a third party, the performance of which is reasonably likely to affect adversely its ability or the ability of the other Party hereto to perform fully its obligations . . .," even though it was still a franchisee of Plaintiff.  *Id.* ¶ 33.  Lindsey and Finucane traveled to meet in person with HomeNet, with the travel expenses paid for out of Car Data 24/7's bank accounts.  *Id.* ¶ 34. Between December 2014 and February 2015, Lindsey and Finucane started shifting the car dealerships serviced by Car Data 24/7 away from Plaintiff's vehicle inventory platform to HomeNet's vehicle inventory platform.  *Id.* ¶ 35.  On February 3, 2015, Plaintiff issued a formal notice of default to Car Data 24/7 for its non-payment of fees under the franchise agreement.  *Id.* ¶ 36.

On February 9, 2015, Lindsey advised a car dealership client that Car Data 24/7 will no longer represent Plaintiff but will instead represent HomeNet.  *Id.* ¶ 37.  On February 13, 2015, a

different car dealership contacted Plaintiff to cancel its service and switch to HomeNet because of a relationship with Lindsey. *Id.* ¶ 38.  That same day, Plaintiff sent Car Data 24/7 a second notice of default, which included a warning that Car Data 24/7, Lindsey, and others violated their respective restrictive covenants and non-compete agreements. *Id.*

On February 16, 2015, Lindsey registered a new business in Florida—Car Data, Inc. (space between "Car" and "Data"), which was dissolved the same day. *Id.* ¶¶ 39–40.  Also on February 16, 2015, Finucane registered a new business in Florida—CarData, Inc. (no space between "Car" and "Data") (hereinafter "CarData"). *Id.* ¶ 41.

After finding out that Car Data 24/7 had an existing contract with Plaintiff, HomeNet terminated its contract with Car Data 24/7 effective February 23, 2015. *Id.* ¶¶ 43–44.  Plaintiff terminated its franchise agreement with Car Data 24/7 effective February 27, 2015. *Id.* ¶ 45. Despite Plaintiff's efforts to the contrary, 79 out of the 80 car dealerships serviced by Car Data 24/7 pursuant to the franchise agreement stayed with Lindsey, Finucane, and the new business entity CarData. *Id.* ¶ 46.

Plaintiff alleges that CarData was organized to continue the operations of Car Data 24/7 because both entities use substantially the same fictitious name; use substantially the same logo; operate the exact same type of business; Lindsey and Finucane maintained their key roles in the business; the companies' vendors perform the same service; CarData maintains the same physical address, P.O. Box., and contact information as Car Data 24/7; and the companies operate as a single business entity. *Id.* ¶¶ 48–58.  Plaintiff alleges that Car Data 24/7 transferred its name, customers, goodwill, business model, income, profits, assets, and employees to CarData; that Car Data 24/7's income, profits, and assets were fraudulently transferred to CarData; that CarData attempted to conceal the transfer of income, profits, and assets from creditors; and that CarData is a mere

continuation and/or alter ego of Car Data 24/7. *Id.* ¶¶ 59–64. Plaintiff alleges that various funds, property, and assets were transferred to CarData, Jaylee's Auto Sales, Finucane, and Dealer360, rendering Car Data 24/7 judgment proof, which has prevented Plaintiff from collecting on its judgment. *Id.* ¶¶ 66–75.

C. Count I.

In Count I of the Supplemental Complaint, Plaintiff alleges "Successor Liability as Alter Ego or Mere Continuation" against CarData. Doc. No. 28, at 10. Plaintiff asserts that it "is entitled to pierce the corporate veil of CarData and impose liability upon CarData for its Judgment against Car Data 24/7, as well as attorneys' fees and costs incurred by [Plaintiff] in these supplementary proceedings." *Id.* at 12. Plaintiff asks that the Court:

- Find that Defendant CarData is the alter ego and/or mere continuation of Car Data 24/7;
- Find that as Car Data 24/7's alter ego and/or mere continuation, CarData is liable for the judgment entered in the underlying case against Car Data 24/7; and
- Enter judgment in favor of Plaintiff and against CarData for $1,358,889.24, the full amount of the judgment against Car Data 24/7, plus interest, and attorneys' fees.

*Id.*

CarData moves to dismiss Count I. Doc. No. 38, at 3. CarData argues that Plaintiff has impermissibly combined an alter ego claim and mere continuation claim into a single count, rendering the Supplemental Complaint a shotgun pleading. *Id.* CarData also argues that to the extent Plaintiff asks the Court to "pierce the corporate veil" under an alter ego theory, because it is undisputed that CarData was never a shareholder of Car Data 24/7, that theory is inapplicable in this case. *Id.* at 4–5.

Plaintiff disputes that Count I constitutes a shotgun pleading; argues that alter ego and mere continuation claims may be pleaded in the same count; and points to authority suggesting that an alter ego claim is not limited to a cause of action to impose liability on a corporation's shareholders and that an alter ego can be a successor corporation. Doc. No. 39, at 3–5.

In general, "Florida courts have adopted a very stringent three-part test [for alter ego liability], which requires persuasive evidence that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, No. 5:03-cv-354-Oc-10GRJ, 2008 WL 2993958, at *7 (M.D. Fla. Aug. 1, 2008), *aff'd*, 605 F.3d 856 (11th Cir. 2010) (citing *Hillsborough Holdings Corp. v. Celotex Corp.*, 166 B.R. 461, 468 (M.D. Fla. 1994)). Florida courts have also held, however, that "[u]nder section 56.29(5) a court may fashion an appropriate equitable remedy to afford a judgment creditor as complete relief as possible including finding a new corporation liable for a judgment against its predecessor corporation when the new corporation is merely the alter ego of the predecessor corporation." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 150 (Fla. 4th Dist. Ct. App. 1994) (citing *Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc.*, 688 F. Supp. 1516, 1519 (S.D. Fla. 1988)).[5]

In addition, "[u]nder Florida law, a predecessor corporation's liability may be imposed on its successor corporation if: (1) the successor assumes the obligations of the predecessor; (2) the

[5] Subsection (5) previously provided that "The judge may order any property of the judgment debtor, not exempt from execution, in the hands of any person or due to the judgment debtor to be applied toward the satisfaction of the judgment debt." *See* Fla. Stat. § 56.29(5) (effective through June 30, 2000). That provision can be found currently as part of subsection (6). *See* Fla. Stat. § 56.29(6) (effective on July 1, 2016).

transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008) (citing *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982); *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So. 2d 266, 269 (Fla. 5th Dist. Ct. App. 2002)). "The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Amjad Munim*, 648 So. 2d at 154 (citing *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) (en banc)). "The key element of a continuation is a common identity of the officers, directors and stockholders . . . ." *Id.*; *see also Evans Servs., Inc. v. N.L.R.B.*, 810 F.2d 1089, 1093 (11th Cir. 1987) ("[T]o find successorship the Board will consider not merely a change in title to the assets, but other factors, as well. These include whether the new employer continues the business without substantial change and whether it employs substantially the same workforce.").

Here, I recommend that the Court find Count I of Plaintiff's Supplemental Complaint is sufficient to state a claim for relief. As an initial matter, I find CarData's argument that Count I constitutes an impermissible shotgun pleading unpersuasive.[6] As demonstrated by CarData's

---

[6] CarData points to one case to support its position that an alter ego claim and successor liability claim must be pleaded in separate counts of the complaint. *See Prot. Plan, Inc. v. Stratus Ins. Servs., Inc.*, No. 3:12-cv-945-J-20JBT, 2012 WL 12905870, at *3 (M.D. Fla. Nov. 6, 2012). Not only is that case not binding on this Court, but it is also distinguishable. The court was faced with an alternative request for a more definite statement. The court granted the request in light of the fact that it appeared that the plaintiff was raising a fraud claim in conjunction with the theory of alter ego liability, which required particularity in pleading under Fed. R. Civ. P. 9(b). The plaintiff had also failed to identify the theories it was alleging and which state law applied (Florida or Utah).

I also note that some courts have found that, although permissible under Florida law, in federal court an alter ego theory of liability is not itself an independent cause of action. *See, e.g., ZSR Patlayici Sanayi A.S. v. Sarac Distributors LLC*, No. 2:19-cv-864-FtM-38MRM, 2020 WL 1065231, at *3 (M.D. Fla. Mar. 5, 2020) (collecting authority and dismissing an independent claim for alter ego liability from complaint, allowing the plaintiff to replead alter ego liability and veil piercing allegations as it related to other relevant

ability to respond to the allegations of the complaint, this is not a situation where the complaint "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

In addition, I find Plaintiff's claim that an alter ego theory is limited to a shareholder, and can never apply to a successor corporation, unpersuasive. *See, e.g.*, *Amjad Munim*, 648 So. 2d at 155 ("[A] professional association cannot simply cast off one corporate identity in favor of another in order to evade the effect of a previously existing judgment against the debtor P.A. To take [the defendant's] argument to its logical conclusion would mean a successor professional service association consisting of an individual could never be the alter ego of the predecessor. A professional would then be able to take advantage of the P.A. to shield him or her from personal liability and subsequently shed the old corporate identity in favor of a new one without concern for the debts of the old P.A."); *Allied Indus. Int'l*, 688 F. Supp. at 1519 (finding that under § 56.29, equitable remedies include "finding a new corporation liable for a judgment against its predecessor corporation when the new corporation is merely the alter ego of the judgment debtor"); *see also In re F & C Services, Inc.*, 44 B.R. 863, 868 (S.D. Fla. 1984) (corporate form may be disregarded "[w]here principals of a debtor attempt to transfer corporate assets to a newly created corporate entity, which they also control, [and] when the new corporation is a mere continuation of the debtor,

claims in the complaint). Accordingly, if this Court agreed, CarData's argument that the claims are impermissibly pleaded together must fail.

CarData also points to *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, No. 6:05-cv-136-Orl-DAB, 2007 WL 4557247, at *1 (M.D. Fla. Dec. 21, 2007), *aff'd*, 288 F. App'x 610 (11th Cir. 2008). However, the discussion regarding alter ego liability followed a bench trial, and was not in the context of a motion to dismiss and whether allegations regarding alter ego liability in a complaint were sufficient.

controlled by the same persons, and made up essentially of the same assets and resources as the old corporation").[7]

Finally, I find that Plaintiff's allegations in the Supplemental Complaint are sufficient at this stage of the proceedings to state a claim for a "mere continuation" or successor liability. Among other things, the Supplemental Complaint alleges that CarData was organized to continue the operations of Car Data 24/7; both entities use substantially the same logos; the same individuals control Car Data who controlled Car Data 24/7; CarData continued to provide the same services provided by Car Data 24/7; and CarData used the same physical address, P.O. Box, and contact information of Car Data 24/7. Doc. No. 28 ¶¶ 77–87. *See, e.g.*, *Mana Internet Solutions, Inc. v. Internet Billing Co.*, No. 06-61515-CIV-COOKE/BROWN, 2007 WL 1455973, *2 (S.D. Fla. May 16, 2007) (denying motion to dismiss when the complaint alleged that successor corporation took control of predecessor and assumed responsibility for paying the predecessor's debts); *cf. ZSR Patlayici Sanayi A.S. v. Sarac Distributors LLC*, No. 2:19-cv-864-FtM-38MRM, 2020 WL 1065231, at *2 (M.D. Fla. Mar. 5, 2020) ("[T]he Complaint alleges ZSR is the successor in interest to YAS and details how that came about. According to the pleading, another company (the "Parent") acquired YAS (including all assets, accounts receivable, and legal claims) through Turkish bankruptcy. The Parent then changed YAS' name to ZSR. Like ZSR argues, it is effectively the same company as YAS, just renamed and under different ownership. At this point—when the

[7] I also note that courts have found that the question of whether the alter ego theory applies should not be decided on a motion to dismiss. *See Dickinson v. Hoyt*, No. 3:16-cv-69/MCR/EMT, 2017 WL 3597512, at *3 (N.D. Fla. June 19, 2017) (collecting authority and noting that "[a]t the motion to dismiss stage, 'courts are reluctant to decide the fact intensive question of whether a corporate entity is merely an alter ego to protect an individual defendant from liability.'"); *see also Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) (denying motion to dismiss based on alter ego theory even though complaint was "poorly drafted" and "provid[ed] only the minimum facts permitted by pleading standards").

Court must accept all well-pled allegations as true—that is enough to allege ZSR is the successor in interest to YAS under the contract.").

For these reasons, I recommend that the motion to dismiss as it relates to Count I of the Supplemental Complaint be **DENIED**.

D. Counts II & III.

In Counts II and III of the Supplemental Complaint, Plaintiff alleges "Fraudulent Transfer Under § 56.29(3)(a) & (b)" against CarData and Finucane. Doc. No. 28, at 13–14. Plaintiff alleges that within one year of March 16, 2015, Car Data 24/7 gave both CarData and Finucane "cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, good will, and other interests." *Id.* Plaintiff alleges that those transfers of "cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, good will, and other interests" were made to delay, hinder, or defraud Car Data 24/7's creditors, including Plaintiff. *Id.*

CarData and Finucane move to dismiss Counts II and III, arguing that Plaintiff again impermissibly pleads multiple claims in one count of the complaint; here, claims under both Fla. Stat. §§ 56.29(3)(a) and 56.29(3)(b). Doc. No. 38, at 6–7. CarData and Finucane also argue that Plaintiff fails to state a claim under either statutory provision. *Id.* at 8.

Plaintiff, on the other hand, argues that it was not required to plead its causes of action under § 56.29 with specificity. Doc. No. 39, at 5. Plaintiff further asserts that the Supplemental Complaint sets forth sufficient facts to plausibly set forth a claim for fraudulent transfer under § 56.29(3)(a)–(b). *Id.* at 6–7.

Fla. Stat. § 56.29(3) provides:

> (a) When, within 1 year before the service of process on the judgment debtor in the original proceeding or action, the judgment debtor has had title to, or paid the

> purchase price of, any personal property to which the judgment debtor's spouse, any relative, or any person on confidential terms with the judgment debtor claims title and right of possession, the judgment debtor has the burden of proof to establish that such transfer or gift was not made to delay, hinder, or defraud creditors.
>
> (b) When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. This does not authorize seizure of property exempted from levy and sale under execution or property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy or Notice to Appear may proceed under ss. 56.16-56.20.

Upon review, I recommend that the Court find that Plaintiff has sufficiently pleaded its claims in Counts II and III of the Supplemental Complaint. First, given that subsection (3)(a) does not itself create a substantive cause of action, I do not find that pleading subsection (3)(a) in the same claim as subsection (3)(b) renders the Supplemental Complaint a shotgun pleading. *See In re British Am. Ins. Co. Ltd*., 607 B.R. 753, 757 (Bankr. S.D. Fla. 2019) ("Subsection (3)(a) creates no substantive claim."). Instead, it appears that pleading the claims together is permissible. *See, e.g.*, *Sealed Unit Parts Co. Inc. v. Sycom Surge, Inc*., No. 8:17-mc-109-T-36AEP, 2019 WL 1426329, at *2 (M.D. Fla. Mar. 29, 2019) (finding complaint sufficient where supplemental complaint alleged "avoidance and recovery of transfers pursuant to section 56.29(3)(a) and (b)").

Moreover, Plaintiff alleges that within one year after Car Data 24/7 was served with process in the original lawsuit that resulted in the final judgment, Car Data 24/7 had "cash, personal property, customer accounts, accounts receivable, income, profits, financial accounts, good will, and other interests" that it gave to CarData; and that such transfers were made to delay, hinder, or defraud creditors, including Plaintiff. Doc. No. 28 ¶¶ 99–100, 105–06. These allegations are sufficient to plead a plausible claim for relief. *See, e.g.*, *Sealed Unit Parts Co. Inc.*, 2019 WL 1426329, at *2 ("If the Court takes all of SUP's facts as true, their allegation that the Judgment Debtor fraudulently

transferred 'boat(s), personal watercraft(s), financial accounts, real properties, and interests in one or more corporate entities or limited liability companies' is enough to 'allow the court to draw a reasonable inference that the defendant is liable for the misconduct . . .'" (quoting *Iqbal*, 556 U.S. at 678)).

Finally, to the extent that CarData and Finucane argue that Plaintiff has failed to allege that they "claim title and right of possession" to property of Car Data 24/7, this contention is unpersuasive in light of the allegations of Plaintiff's Supplemental Complaint. *See, e.g.*, Doc. No. 28 ¶¶ 34, 35, 46, 66, 67, 69, 91 (alleging that Finucane and Lindsey used funds from Car Data 24/7's bank accounts for CarData affairs; that Finucane and Lindsey shifted car dealerships from Car Data 24/7 to CarData; Car Data 24/7 paid the payroll expenses of CarData; that Finucane and CarData accepted transfer of property and assets from Car Data 24/7 and attempted to conceal such transfers; that Car Data 24/7 transferred its name, customers, goodwill, business model, income, profits, and other assets to CarData, which was formed to received such assets and business to defraud creditors). CarData and Finucane's reliance on affidavits filed on the record to refute these allegations is unavailing. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002))).[8]

[8] I also note that insofar as Finucane and CarData argue that Plaintiff is not entitled to monetary relief under § 56.29(3)(b), there appears to be conflicting authority on this issue. *Compare In re British Am. Ins. Co. Ltd.*, 607 B.R. 753, 757 (Bankr. S.D. Fla. 2019) (finding monetary relief unavailable under subsection (3)(b)); *with Saadi v. Maroun*, No. 8:07-cv-1976-T-24MAP, 2020 WL 774287, at *5 (M.D. Fla. Feb. 18, 2020) (finding monetary relief may be available under subsection (3)(b) based on liberal construction of the statute). In any event, in the Supplemental Complaint, Plaintiff asks that the Court "enter judgment . . . avoiding and recovering all such transfers" and "awarding judgment . . . for the value of all such transfers." Doc. No. 28, at 13–14. Thus, to the extent that Plaintiff seeks to void such transfers, such relief is plainly permissible under subsection (3)(b).

For these reasons, I recommend that the motion to dismiss as it relates to Counts II and III of the Supplemental Complaint be **DENIED**.

E. Counts VI & VII.

In Counts VI and VII of the Supplemental Complaint, Plaintiff alleges "Fraudulent Transfer Under § 726.105" against CarData and Finucane. *See* Doc. No. 28, at 16–17. Plaintiff alleges that it is a creditor of Car Data 24/7; that CarData 24/7 made improper and illegal payments to CarData and Finucane without receiving a reasonably equivalent value in exchange; that such payments could have applied to the payment of debt due to Plaintiff; and that Car Data 24/7 made the payments with the intent to delay, hinder, or defraud its creditors, including Plaintiff. *Id.*

Chapter 726, Florida Statutes, sets forth Florida's version of the Uniform Fraudulent Transfers Act ("UFTA"). *See generally Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1275 (Fla. 2004). Section 726.105(1) provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(a)–(b). Section 726.105 "provides two theories by which a present or future creditor may recover fraudulent transfers: an actual fraud theory, under subsection (a), and a

constructive fraud theory, under subsection (b)." *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1369 (S.D. Fla. 2011) (quoting *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299 1318 (M.D. Fla. 2009)).

To state a valid actual fraudulent transfer claim, "the creditor is to demonstrate that: (1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th Dist. Ct. App. 2002) (citing *Huntsman Pckg'g Corp. v. Kerry Pckg'g Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998)); *see also Oginsky*, 784 F. Supp. 2d at 1369–71. "Because of the difficulty of proving actual intent, past statutory law, existing case law and the UFTA look to indicia of intent commonly known as 'badges of fraud.'" *Oginsky*, 784 F. Supp. 2d at 1370 (citations omitted).[9]

---

[9] "In determining 'actual intent' under § 726.105(1)(a), the UFTA directs courts to consider whether any of the following 'badges of fraud' are applicable to the transfer at issue:

> (a) The transfer or obligation was to an insider.
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was of substantially all the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

CarData and Finucane contend that because there are two distinct statutory claims available under § 726.105, which apply to different types of transfers, Plaintiff's Supplemental Complaint is due to be dismissed for failure to separately plead these claims. Doc. No. 38, at 9. CarData and Finucane also argue that Plaintiff has failed to state a claim under § 726.105(1)(b), and that Plaintiff's claims under § 726.105 are barred by the applicable statute of limitations. *Id.* at 9–10.

Plaintiff argues that claims under § 726.105 are not required to be pleaded with particularity,[10] and that the Supplemental Complaint plausibly alleges fraudulent transfers under § 726.105. Doc. No. 39, at 7–8. Plaintiff also argues that CarData and Finucane's "conclusory argument" regarding the statute of limitations fails to establish "beyond a reasonable doubt that a plaintiff can prove no set of facts that toll the statute." *Id.* at 8 (citing *Lindley v. City of Birmingham, Ala*., 515 F. App'x 813, 815 (11th Cir. 2013)).

On review, neither the motion to dismiss nor Plaintiff's response adequately set forth how the Supplemental Complaint does (or does not) meet the statutory requirements of both subsections (1)(a) and (1)(b). *See* Doc. Nos. 38, 39. As CarData and Finucane argue, it is entirely unclear from the allegations of the Supplemental Complaint whether Plaintiff intends to proceed on a theory of actual fraud, constructive fraud, or both. *See, e.g*., *Wiand v. Dewane*, No. 8:10-cv-246-T-17MAP, 2011 WL 4460095, at *4 (M.D. Fla. July 11, 2011) (noting that the Federal Rules of Civil Procedure permit alternative pleading). In response to the motion to dismiss, Plaintiff argues, in

---

*See Gen. Trading Inc. v. Yale Materials Handling Corp*., 119 F.3d 1485, 1498 (11th Cir. 1997). "[I]t is clear from the language of the Statute that in determining intent, consideration may be given to factors other than those listed." *Id.* (citations omitted).

[10] *See, e.g*., *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co*., No. 00-06410-CIV, 2007 WL 4482611, at *4 (S.D. Fla. Dec. 19, 2007) (finding heightened pleading standard in Fed. R. Civ. P. 9(b) does not apply to claims brought under Fla. Stat. § 726.105). In the motion to dismiss, CarData and Finucane do not address Rule 9(b) or argue that it applies in this case. *See* Doc. No. 38.

entirety, that "the Supplemental Complaint specifically details the requisite allegations, including the transfers made to each particular impleaded Defendant, the lack of consideration for these transfers, and the temporal proximity to the entry of judgment against the Judgment Debtor.   Thus, dismissal of Counts VI and VII is not warranted because these claims plausibly allege fraudulent transfers under § 726.105."   Doc. No. 39, at 7–8.

I find Plaintiff's explanation insufficient to demonstrate how the allegations of the Supplemental Complaint state a cause of action under subsection (1)(a) or (1)(b).   Even assuming that the Supplemental Complaint states a plausible claim for relief for actual fraudulent transfer under subsection (1)(a),[11] the Supplemental Complaint contains no allegations that Car Data "was engaged or was about to engage in a business or a transaction for which the remaining assets of [Car Data] were unreasonably small in relation to the business or transaction" or that CarData "intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due," which is required to state a claim under subsection (1)(b).   *See* Fla. Stat. § 726.105(1)(b)1.–2.   Therefore, I recommend that the Court find that Counts VI and VII, as currently pled, are due to be dismissed for lack of pleading specificity.

Moreover, as CarData and Finucane argue, there may be statute of limitations issue regarding the transfers as alleged in the Supplemental Complaint.   Pursuant to Fla. Stat. § 726.110,

---

[11] In the Supplemental Complaint, Plaintiff alleges that it is a creditor of Car Data 24/7; that Car Data 24/7, with the intent to defraud Plaintiff, made improper and illegal payments to CarData and Finucane without receiving a reasonably equivalent value in exchange; and that such payments could have been applicable to the payment of debt due to Plaintiff.   Doc. No. 28 ¶¶ 122–27, 130–35.   Plaintiff further alleges that Car Data 24/7 fraudulently transferred its name, customers, goodwill, business model, income, profits, and other assets to CarData, *id.* ¶¶ 59, 62, and that Finucane, as owner of CarData, personally profited from Car Data's former business and attempted to conceal the transfer of income and profits from Car Data 24/7, *id.* ¶¶ 68–69.   Moreover, in the motion to dismiss, CarData and Finucane do not expressly argue that Plaintiff fails to state a claim under Fla. Stat. 726.105(a)(1).   Nonetheless, due to the lack of pleading specificity, the undersigned declines to find that Plaintiff's allegations, as currently pled, are sufficient to state a claim under subsection (1)(a).

> A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless [the] action is brought:
>
> (1) Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant; [or]
>
> (2) Under s. 726.105(1)(b) . . . within 4 years after the transfer was made or the obligation was incurred. . . .

In the Supplemental Complaint, Plaintiff alleges transfers occurring in 2014 and 2015. *E.g.*, Doc. No. 28 ¶¶ 34–35, 66–75. In amending the Supplemental Complaint, therefore, Plaintiff must plead transfers that occurred within the limitations period as it relates to the specific subsections of the statute. *See, e.g.*, *Saadi*, 2020 WL 774287, at *3 (noting that the different provisions under Chapter 726 "have different limitations periods under Florida Statute § 726.110, so the identification of the specific provision upon which the claim of constructive fraud is being brought is important").

Accordingly, I recommend that the motion to dismiss as it relates to Counts VI and VII of the Supplemental Complaint be **GRANTED**, and that the Court dismiss Counts VI and VII of the Supplemental Complaint, with leave to amend.

## IV. RECOMMENDATION.

For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court:

1. **GRANT** Plaintiff's Unopposed Motion Requesting that the Court Direct Clerk to Designate Case Management Track and Direct Parties to Confer and Submit a Case Management Report (Doc. No. 40);
2. **DIRECT** the Clerk of Court to convert this matter to a civil case;
3. **ORDER** Plaintiff to pay the difference in the filing fees;

4. **DIRECT** the Clerk of Court to designate this case as a Track Two case pursuant to Local Rule 3.05;

5. **ORDER** the parties to meet and prepare a Case Management Report, within a time established by the Court;

6. **GRANT in part and DENY in part** Impleaded Defendants' Motion to Dismiss Plaintiff's Supplemental Complaint (Doc. No. 38);

7. **DISMISS** Counts VI and VII of the Supplemental Complaint, with leave to amend; and

8. **PERMIT** Plaintiff to file an amended complaint, within a time established by the Court.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 13, 2020.

Leslie R. Hoffman

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record